586

Zerbe Penn Advertising Co., Inc., et al., Plaintiffs and Appellants, *v.* José A. Berrocal, Treasurer of the Government of the Capital of P.R., Defendant and Appellee.

No. 390.   Decided November 30, 1962.

*Sifre, Ruiz Suria & Sifre* for appellants.   *Adelaida Vicente Souffront* and *Gerardo Muñiz Dones* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

Mr. Justice Blanco Lugo delivered the opinion of the Court.

The issues raised in this appeal hinge on determining which is the adequate basis for fixing appellants' volume of business for the purposes of levying the municipal license tax provided by Act No. 26 of May 28, 1914, as subsequently

amended, 21 L.P.R.A. § § 621–39.[1]  Zerbe-Penn Advertising
Co., Inc. and its successor Young & Rubicam (P.R.) Corp.,
publicity and commercial advertising agencies, constitute a
business or industry listed in group B of § 2 of the Act
*supra*, 21 L.P.R.A. § 622.

In general terms, those agencies *render services* to their
customers in the preparation of publicity budgets; after
the amount of expenses is agreed upon, the agency places
the advertisements, procures and contracts the time and
space necessary with the different publicity mediums—press,
radio, television, etc.  The customers pay the agency the
total amount of the advertisement or publicity, including
the cost of the publicity medium, other incidental expenses
incurred in the preparation of the advertisement, and the
live talent, if any.  The remuneration or compensation of
the agencies is usually calculated on the basis of 15 per cent
of the total cost of the publicity.  The inference drawn from
the evidence introduced is that the agencies "receive and
pay all the moneys involved in the different contracts and
receive [from the publicity medium] or retain 15 per cent
of the total cost."  Thus, for example, when the publicity
medium pays the agency a commission lower than that agreed
upon, the customer pays the difference up to that percentage.

During all the years involved in the different actions
which were consolidated for the purpose of decision, the
Government of the Capital has imposed on appellants a li-
cense tax calculated on the total amount of the contracts
entered into with their customers.  Taxpayers maintain that
for the purposes of the imposition there should be considered
only the amount of the commissions received, excluding to
that effect the cost of the publicity mediums and the live

---

[1] The Municipal Law of 1960, No. 142 of July 21, 1960, 21 L.P.R.A.
§ 1101 *et seq.*, did not affect the power of municipalities to impose license
taxes under Act No. 26 of 1914.  See § § 31 and 50, 21 L.P.R.A. § § 1173
and 1269.

talent.[2] The trial court rendered judgment for the municipality on the ground that § 4 of Act No. 26, 21 L.P.R.A. § 624, provides that volume of business shall be understood to be the gross receipts in any municipality of the business or industry, from its business transactions therein,[3] "its gain or profits not alone to be considered."

The decision of this appeal therefore depends on the determination of what is meant by appellants' "volume of business." Section 4 of the License Tax Act does not contain a specific reference to publishing agencies, such as in the case of banks, business stores and establishments, land transportation enterprises, telephone and electric services, and the commission agents or brokers. We should therefore abide by the general definition, as it stood during the tax years involved herein,[4] which reads: "volume of business shall be understood to be the gross receipts in any municipality of the business or industry, from its business transactions in Puerto Rico, its gain or profits not alone to be considered," and adds "the amount of receipts from any business transacted or *service rendered* in accordance with the nature of the business or industry."

---

[2] The parties stipulated that the "volume of business" to be considered according to their respective positions is as follows:

| Year | According to the Capital | According to the Agencies |
|---|---|---|
| 1954–55 | $ 549,000 | 79,968.13 |
| 1955–56 | 625,000 | 89,827.58 |
| 1956–57 | 787,000 | 109,421.58 |
| 1957–58 | 815,000 | 166,691.07 |
| 1958–59 | 1,109,000 | 166,691.07 |
| 1959–60 | 1,234,000 | 185,100.00 |

[3] In connection with what was meant by volume of business of a wholesale establishment which had branch offices outside the municipality where the wholesalers' principal house is situated, see *Shell Co., Ltd.* v. *Gov't of the Capital*, 82 P.R.R. 38 (1960), which was rendered ineffective by Act No. 93 of June 25, 1962 (Sess. Laws, p. 243), which amended §§ 1 and 4 of the Municipal License Act.

[4] As stated in the preceding footnote, this section was amended in 1962, but for the sole purposes of reconciling the same with the amend-

In our opinion, these provisions mean that the amount of the tax is levied on the gross receipts and not on the net receipts—hence the reference that the volume of business is determined irrespective of the gain or profits—and to distinguish—by the nature of the business or industry—between the amount of receipts when they are derived from the operation of a business or from a service rendered. We need not elaborate further to conclude that an advertising agency is engaged essentially in the rendering of services and that the operations which it carries out are those connected with the rendering of these services, its volume of business being therefore the total amount received by way of compensation or remuneration for its activities or efforts.

In *Compañía Azucarera del Toa* v. *Municipality of Toa Baja*, appeal No. 11801, we affirmed by judgment of June 30, 1958 the trial court's determination that, for the purposes of levying a municipal license tax on a sugar mill, the amount of sugar processed corresponding to the colonos could not be included as part of its volume of business, and that only the amount retained by the mill under the express provisions of the Act as its compensation for the grinding could be included. As stated by the trial court, "the inescapable conclusion is that the mill receives in exchange for its services only the value in money of the sugar and molasses corresponding to it . . . since it never acquires ownership title in the colonos' shares, nor do they belong to it . . . The value of the colono's share would not constitute part of its volume of business." With greater reason, in the case of publishing agencies we can not consider as part of their volume of business the amounts representing the advertising

ment to § 1 to the effect that "in the case of businesses or industries with headquarters established in a given municipality and keeping other industrial and commercial organizations. sale offices, branches or warehouses doing business in municipalities other than the one where the headquarters are located, the municipal license tax shall be levied by each municipality . . . on the basis of the volume of business carried out by or in behalf of the said home office in said municipality."

cost, which cost forms part properly of the volume of business of the publicity medium. That is why the purported comparison with the commission agent who sells goods on commission is wholly untenable. The advertising agency renders services; it does not sell goods. In any event, according to the rule of construction stated in *Cervecería India* v. *Municipality*, 77 P.R.R. 91 (1954), the scope of the taxing power should be restrictively construed.[5]

Since according to the stipulation on which the judgment of the trial court was based there exists a controversy as to whether or not certain payments tendered in advance by appellants were voluntary,[6] and whether others were tendered out of time, and in the absence of evidence on the matter, instead of reversing the judgment rendered on August 16, 1960 in the consolidated cases, we will merely set it aside and remand the cases to the trial court for any subsequent disposition consistent with the terms of this opinion.

---

[5] Our scant opinions on this matter shed no light on the question raised in this appeal. In connection with other aspects of interpretation of the License Tax Act, see *Municipality of Mayagüez* v. *Superior Court*, 85 P.R.R. 756 (1962); *Cooperativa Cafeteros* v. *Gov't of the Capital*, 82 P.R.R. 49 (1961); *Shell Co., Ltd.* v. *Gov't of the Capital*, 82 P.R.R. 38 (1960); *Texas Co. (P.R.), Inc.* v. *Municipality*, 81 P.R.R. 487 (1959); *Esso Standard Oil Co.* v. *The Capital*, 80 P.R.R. 152 (1957); *Cervecería India* v. *Municipality*, 77 P.R.R. 91 (1954); *A. J. Tristani* v. *Municipality*, 76 P.R.R. 710 (1954); *San Miguel & Cía.* v. *Diez de Andino, Treas.*, 71 P.R.R. 320 (1950); *Compañía Cervecera* v. *Municipality*, 65 P.R.R. 558 (1946); *Yabucoa Sugar Co.* v. *Municipality*, 44 P.R.R. 336 (1933); *People* v. *Paz*, 35 P.R.R. 744 (1926); *Fajardo Devel. Co.* v. *Camacho et al.*, 35 P.R.R. 327 (1926); *People* v. *Barnés*, 28 P.R.R. 853 (1920); *Mun. of San Juan* v. *P. R. Coal Co.*, 28 P.R.R. 245 (1920); *People* v. *Subirá*, 27 P.R.R. 567 (1919); *People* v. *Garzot*, 24 P.R.R. 223 (1916); *People* v. *Central Fortuna*, 22 P.R.R. 100 (1915).

[6] The defense on the voluntary character of the payment was set up in actions CS-54–4311 (first and second quarters of 1954–1955), CS-56–708 (third quarter of 1955–1956), and CS-56–5466 (first and second quarters of 1956–1957). See *Compañía Cervecera* v. *Municipality*, 65 P.R.R. 558 (1946).